### UNITED STATES DISTRICT COURT FOR
### THE DISTRICT OF RHODE ISLAND

**Linda Lenz,**
*Plaintiff,*

     **v.**

**University of Rhode Island,**
*Defendant.*

**CA No:  1:22-cv-00352**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

### COMPLAINT

This action is commenced by Linda Lenz (hereinafter "Plaintiff") against the University of Rhode Island, (hereinafter "Employer," "URI," or "Defendant") to remedy and seek relief for unlawful employment practices arising under *The Age Discrimination in Employment Act of 1967*, 29 U.S.C. § 623(a) and § 623(d) ("ADEA"), *Rhode Island Fair Employment Practices Act*, R.I. Gen § 28-5-1 *et seq*., ("FEPA"), and the *Rhode Island Civil Rights Act of 1990,* R.I. Gen. Law § 42-112-1 *et seq.* (hereinafter "RICRA").

### PARTIES

1.  Plaintiff Linda Lenz (hereinafter "Plaintiff") resides in the City of Warwick, County of Kent, within the State of Rhode Island.

2.  The University of Rhode Island, (hereinafter "Defendant," "URI," or "Employer") is a domestic, non-profit corporation with a principal place of business in Kingston, Rhode Island.

### JURISDICTION AND VENUE

3.  This Court has jurisdiction to hear the Complaint pursuant to 28 U.S.C. § 1331.

4.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  Plaintiff's state claims are so related to Plaintiff's federal claims that they form

part of the same case or controversy.  Consideration of judicial economy, fairness, and convenience warrants this Court's exercise of supplemental jurisdiction over Plaintiff's state law claims.

5.  Venue of this action lies pursuant to 28 U.S.C. § 1391(b) for the ADEA because Defendant conducts business in the state of Rhode Island by employing personnel such as Plaintiff, because the alleged unlawful practices occurred in Rhode Island, and because the evidence exists, in part, in Rhode Island; the state anti-discrimination laws, pursuant to RICHR's authority, are applicable to Defendant and Plaintiff and thus the judicial district of this Court is proper.

## ADMINISTRATIVE PROCEDURES

6.  Charges of Discrimination were timely filed by Plaintiff with the Rhode Island Commission of Human Rights (RICHR) and co-filed with the EEOC on or about February 15, 2022 (RICHR NO.22 EAG 131 and EEOC NO. 16J-2022-00107).

7.  An amendment to the charge of discrimination was filed on or about June 13, 2022; this amendment added a claim of constructive discharge to the pre-existing claims of failure to promote.

8.  On or about July 8, 2022, the RICHR issued a Notice of Right to Sue (RICHR NO. 22 EAG 131) and submitted the request for a right to sue from the EEOC filings (EEOC NO.16J-2022-00107), which issued its Right to Sue on or about July 21, 2022, enabling a private civil action to be filed.

9.  This Complaint was timely filed after issuance of the Notice of the Right to Sue.

## FACTUAL ALLEGATIONS

10. On or about January 30, 2000, Plaintiff began working for the University of Rhode Island ("Defendant," "employer" or "URI") in South Kingstown, RI and over the next twenty-two (22) years, she worked at URI in various positions.

11. Plaintiff is a 54-year-old woman who is afforded the protections the Age Discrimination in Employment Act (ADEA).

12. At all times relevant since her hiring, plaintiff's performance met or exceeded her employer's legitimate expectations.

13. In or around 2018 Plaintiff applied for a promotion to an Accounts Payable Accountant position.

14. At the time of application, Plaintiff was approximately fifty (50) years old.

15. The position would have paid substantially more money than Plaintiff was earning.

16. The position would have provided for further advancement opportunities for Plaintiff to earn more money, using that position as a springboard to higher level and management positions at URI.

17. Plaintiff was passed over for the promotion in favor of a younger temporary worker, Ms. Jessica Vescera ("Ms. Vescera).

18. Ms. Vescera had little to no relevant experience (other than her short term temporary work at URI).

19. Moreover, at the time that Ms. Vescera was selected over Plaintiff for the Accounts Payable position, they had similar educations, yet Plaintiff had several years more of related work experience and Ms. Vescera did not.

20. In fact, Ms. Vescera's work experience, prior to URI, was wholly unrelated, with her Linkedin page listing her *only experience* prior to URI was as *a photographer* - at Images by Jess.

21. For the prior nine-years, from January 2013 until her temporary work started at URI earlier in 2018, photography is the *only* work experience listed on Ms. Vescera's LinkedIn resume.

22. Ms. Vescera is nearly a decade younger than Plaintiff.

23. Ms. Vescera was substantially younger than Plaintiff at the time she was awarded the position over Plaintiff.

24. Plaintiff was qualified for the position and Ms. Vescera was not.

25. Yet Ms. Vescera was awarded the position over Plaintiff.

26. The only reason Ms. Vescera obtained the promotion over Plaintiff was because she was substantially younger.

27. There was no legitimate reason for URI to select Ms. Vescera over Plaintiff for that position.

28. URI has a pattern and practice of discriminating against older workers, especially female workers that are older.

29. In or around 2018, Plaintiff reported her concerns of being passed over for the promotion in favor of the substantially younger, less experienced, and less tenured, Ms. Vescera.

30. Despite Plaintiff's reports to HR and the Affirmative Action office, neither office investigated Plaintiff's concerns.

31. After Plaintiff was rejected from the Accounts Payable position, she was awarded the position of Assistant Business Manager in the Engineering Department, in or about January of 2019.

32. In that position, Plaintiff reported to another older woman, Sheryl Girard ("Ms. Girard") who was very happy with Plaintiff's performance as her Assistant Business Manager.

33. Ms. Girard, however, herself experienced age-related discrimination.

34. For example, Ms. Girard was told by URI upper management and leadership, including but not exclusive to, the previous Dean Raymond Wright and Annie Jones, an Executive Assistant, that she was "absent minded".

35. Ms. Girard was also called "slow".

36. Ms. Girard was also repeatedly asked when she was going to retire.

37. URI upper management and leadership did not call younger women, including Ms. Vescera, "absent minded" or "slow" and they did not ask younger women like Ms. Vescera when she was going to retire.

38.  On or about September of 2021, the Business Manager (of the engineering college), Ms. Girard, was pushed by URI upper management and leadership, including but not exclusive to, the previous Dean Raymond Wright and Annie Jones, an Executive Assistant, that to retire.

39. Ms. Girard had asked to continue to work until the end of 2021, however, she was pushed out and not allowed to stay past September of 2021.

40. Prior to Ms. Girard being pushed to retire, she had gone on one or more extended medical leaves during 2020 and 2021.

41. During Ms. Girard's medical leaves, Plaintiff performed her role, along with Ms. Girard's Business Manager role successfully.

42. Ms. Girard had also trained Plaintiff to take over her position in preparation for her retirement.

43. Upon Ms. Girard's retirement, Plaintiff took over the Business Manager position on an interim basis from September of 2021 until Plaintiff's own work-related medical leave in December of 2021.

During this time, Plaintiff also performed her own job as the Assistant Business Manager.

44. Plaintiff performed both jobs successfully.

45. In total, Plaintiff performed the job of acting Business Manager job for nearly a year in total while Ms. Girard was out on medical leave and after Ms. Girard retired.

46. Plaintiff was told that she would be the new Business Manager in the Engineering Department by members of leadership.

47. When Ms. Girard's former position as Business Manager was posted, Plaintiff applied for her position and continued to perform both her job as Assistant Business Manager and the Business Manager position on an interim basis.

48. Ms. Vescera, the *same* substantially younger (and comparably inexperienced) employee who was awarded the 2018 job over Plaintiff, *also applied* for the Business Manager job in the Engineering department.

49. At that point in 2021, Ms. Vescera's work – to date – at URI included her short-term temporary work at URI and then her work at URI since 2018 in the accounting department.

50. Ms. Vescera had little to no knowledge, skills, and experience for the Business Manager position.

51. Whereas, Plaintiff had extensive knowledge from performing the Assistant Business Manager role since 2019 and having performed the Business Manager role for approximately a year in sum from 2020 to 2021.

52. Unquestionably, Plaintiff was the most qualified applicant for the position of Business Manager for the Engineering College.

53. On November 29, 2021, Plaintiff interviewed for the Business Manager position in a panel interview by the search committee.

54. During her interview, the interviewers, Peter Swaszek ("Mr. Swaszek") and others on the search committee, did not ask the questions as URI now claims were the questions asked per their list provided.

55. For example, the portions of questions about past experience were changed or omitted to be worded more like critical thinking questions rather than questions about experience.

56. Thus, during the interview, the interviewers, Mr. Swaszek and others asked few to no questions about Plaintiff's experience in the Assistant Business Manager Position.

57.  Thus, during the interview, the interviewers, Mr. Swaszek and others asked few to no questions about Plaintiff's experience in the Assistant Business Manager Position.

58. The committee seemed to value responses that were 'new' or 'out of the box' as well as responses that were rapid rather than slow and thoughtful; the search committee seemed disinterested in Plaintiff's slower responses and her as a candidate from the outset.

59. During the interviews, the interviewers including Mr. Swaszek, a male in a leadership role, especially did not appear to like Plaintiff's answers to the questions and did not seem to think her responses were fast enough.

60. In addition, the search committee often responded to Plaintiff's answers to these questions by asking her to repeat herself as if they did not understand her answer.

61. This made Plaintiff feel as though she was absent minded.

62. This treatment during the interviews reminded Plaintiff of how Ms. Girard was treated before she was pushed to retire.

63. In short, Plaintiff felt like the search committee treated her just like Ms. Girard, her former boss, who was treated as if she was too absent minded, too slow for the job, and then pushed to retire.

64. Plaintiff's answers were objectively appropriate, however they were subjectively judged unfavorably.

65. Defendant did not provide interviewers with formal interview guides with behaviorally anchored rating scales.

66. Defendant did not validate the interview questions or ratings to ensure there was no disparate impact on any protected class including older employees.

67. Defendant did not subject the questions to the EEOC guidelines for employment selection devices.

68. The questions asked had little to no predictive validity for performing the actual Business Manager job.

69. There is no technical report available for the interview questions demonstrating the statistical characteristics of the interview, upon information and belief.

70. Defendant's agents did not even use the questions provided as written.

71. Upon information and belief, the interview questions, as asked, had an adverse impact on older employees and thus, had disparate impact as the term is used legally.

72. Plaintiff was also treated disparately during the interview because upon information and belief, Ms. Vescara and other applicants were not made to feel absent minded, made to feel as though their answers were uninteresting or outdated, or otherwise made to feel dismissed during the interview process.

73. Upon information and belief, had Plaintiff been asked work experience questions and questions about her knowledge, skills, and abilities for the Business Manager job – which would have predictive validity for the job and would not have an adverse impact for older workers – Plaintiff would be scored as to be the more qualified candidate for the job, objectively.

74. Had the interview questions had behaviorally anchored rating scales, rather than no objective scales, Plaintiff would be been scored to be the more qualified applicant for the job, objectively.

75. After the selection interviews, Plaintiff was passed over for the position of Business Manager (of the engineering college) in favor of the substantially younger Ms. Vescera.

76. As stated, Ms. Vescera is nearly a decade younger than Plaintiff and has only worked at URI for about four (4) years in comparison to Plaintiff's twenty-two (22) years at URI (at that time).

77. Also as noted, Ms. Vescera's sole prior work experience was in photography.

78. Former Dean Raymond Wright and her former boss Ms. Girard had expressed at some point before their own retirement that Plaintiff was a preferred choice for the Business Manager position.

79. However, after both the former Dean Wright and Ms. Girard retired, the much younger Ms. Vescera was awarded the job instead of Plaintiff.

80. In fact, when Plaintiff asked the Interim Dean, Mr. Swaszek why she did not get the job, he gave a pretextual answer about her responses to the invalidated and unpredictive interview questions.

81. When pressed, especially in light of Plaintiff's experience *in that very job*, Mr. Swaszek stated that he needed to speak to HR before he could say more.

82. There is no legitimate non-discriminatory reason to award the Business Manager position that Plaintiff was *already* performing to the substantially younger Ms. Vescera.

83. Moreover, the selection process was set up to discredit Plaintiff's experience, and there is no validation evidence that supports that the either the questions as written or as asked (which was different) had any predictability with Business Manager job performance.

84. How the questions were read or asked also differentially treated Plaintiff and preferentially treated Ms. Vescera by not comparing experience.

85. Possibly worst of all, after Plaintiff learned she was passed over for the promotion, Plaintiff was insultingly asked to *train Ms. Vescera* for the Business Manager position *which Plaintiff was performing* at the time Ms. Vescera took over.

86. Plaintiff also had to *report to the inexperienced Ms. Vescera* as Plaintiff trained her to do the position Plaintiff was performing.

87. It was all extremely humiliating and upsetting to Plaintiff after 22 loyal years at URI.

88. Being passed over for Ms. Vescera a second time, and *now having to not only report to her but train her* was more than Plaintiff could bear mentally and psychologically.

89. The situation sent Plaintiff into a state of severe emotional distress and her doctors put her on medical leave in December of 2021 through early January, 2022.

90. Upon going out on medical leave, URI did not offer Plaintiff FMLA which upon information and belief, she qualified for.

91. Also, as a result of the less qualified Ms. Vescera being chosen over Plaintiff yet again, Plaintiff made another report of age discrimination to both HR and the Affirmative Action office in or around the end of 2021

92. Upon information and belief, to date no action has been taken to investigate Plaintiff's claims and HR has not reached out to Plaintiff to either start the investigation by interviewing her or to inform her as to the results of any investigation.

93. The lack of action by URI caused Plaintiff increased emotional distress; as such, Plaintiff's doctor extended her medical leave until February 2022.

94. Plaintiff's mental distress has manifested in physical symptoms and she continues to be under the care of physicians.

95. Clearly, Plaintiff's claim is for disparate treatment, failure to promote specifically, is in violation of the ADEA and state analog laws which protect against disparate treatment based on age.

96. However, Plaintiff also has a disparate impact claim, based upon the selection method used which was unstandardized, subjective, and lacked a technical report summarize validity and adverse impact of the selection tool.

97. The ADEA recognizes a claim for disparate impact for selection methods.

98. Where a selection method has adverse impact, as the interview used in Plaintiff's case did, the employer must show that the test or device chosen was a reasonable one; a reasonable selection devise for the Business Manager position would include questions asking about the applicant's experience *performing the business manager or similar positions.*

99. Upon information and belief, these interview questions do not correlate to an up-to-date job analysis of the Business Manager job and the questions were not validated, as written or as asked.

100. In other words, upon information and belief, these interview questions/guides do not meet the requirements of the EEOC Uniform Guidelines which prohibits selection methods from disproportionately excluding people in a particular group such as older employees.

101. Thus, Plaintiff has an adverse impact claim for age, as it relates to this failure to promote adverse job action, in addition to the disparate treatment claim for failure to promote.

102. From December 2021 until February of 2022 Plaintiff lost wages and had to use her personal time she had accrued which cost her notable income.

103. While on medical leave, Plaintiff searched for other jobs within URI.

104. Plaintiff applied to four different jobs at URI that she was highly qualified for between December 6, 2021 and March 1, 2022 as well as jobs outside URI but within the State of Rhode Island Administration offices.

105. In mid-February of 2022 Plaintiff filed a charge of discrimination with the Rhode Island Commission of Human Rights; Defendant was subsequently notified of the charge.

106. After URI agents learned about the charge of discrimination, Plaintiff was retaliated against by never being hired URI for any of four jobs she applied for, despite being qualified for all.

107. More specifically, the reason Plaintiff applied to other jobs at URI and outside URI was to avoid the distress caused by working for, training, and reporting to, Ms. Vescera in the position that she lost due to discrimination.

108. Plaintiff applied to the following jobs at URI, all of which she had experience in: (1) Specialist I, Grants and Contracts, (2) Specialist II Grants and Contracts within the Sponsored Projects Department, (3) Coordinator/Specialist within the Coastal Resource Center, and (4) Cash Reconciliation Accountant in the Controller's Office.

109. When Plaintiff came off medical leave, she was even asked temporarily work in a job that was the same or similar to the some of the jobs she applied to so clearly she was qualified.

110. Despite applying for four jobs at URI, all of which Plaintiff was qualified for, she was only interviewed for three of the jobs.

111. Moreover, Plaintiff was not offered any of those jobs.

112. The selection methods used in those jobs were once again unvalidated statistically or qualitatively, was not linked to any job analysis, had no validity and adverse impact statistics, and no validation evidence or a technical report.

113. Upon information and belief, the persons hired for the four positions were substantially younger than Plaintiff and/or were men.

114. In the meantime, after her temporary job ended, Plaintiff was forced to work for Ms. Vescera.

115. Plaintiff spent a substantial amount of time answering Ms. Vescera's questions about how to do the Business Manager job.

116. All the while, Plaintiff was not able to obtain *any* other job at URI despite 22 years at URI.

117. No reasonable person under those circumstances could continue working at URI.

118. The stress and emotional distress was too much for Plaintiff to handle.

119. Thus, on or about May 9, 2022, Plaintiff felt she had no other choice but to quit after 22 years at URI; on that date she was constructively discharged.

120. Plaintiff's last day of work was May 31, 2022.

121. Plaintiff was not able to obtain another job at URI due to systemic and individual age discrimination, as well as due to URI utilizing selection tools which have an adverse impact on older workers, women, and especially older female workers.

122.  Plaintiff was not able to obtain another job at URI, as well, due to retaliation for filing her prior charge with the Commission for Human Rights in February of 2022 and reporting discrimination to URI officials in or about the end of 2021.

123.  There are no other reasonable explanations how with Plaintiff's 22 years at URI, Plaintiff could not get any of the jobs she applied for, especially when once again she had performed the functions of many of those jobs on a temporary basis at URI when she came off of medical leave.

124.  As a direct and proximate result of Plaintiff's employer's discriminatory actions, she suffered and continues to suffer loss of income and earning capacity; loss of work-related benefits, privileges, promotions, and status; experienced humiliation and loss of standing in the community; suffered and continue to suffer from extreme emotional distress and mental anguish resulting in physical injury; and suffered other injuries, all continuing to date.

**COUNT ONE**
*AGE DISCRIMINATION DISPARATE TREATMENT - FAILURE TO PROMOTE*
***Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) and § 623(d) (ADEA), Violation of RI Fair Employment Practices Act, R.I. Gen 1956 § 28-5-1 et seq. (FEPA), and Rhode Island Civil Rights Act of 1990, R.I. Gen. Law § 42-112-1 et seq. (RICRA)***

125.  Paragraphs 1-124 are incorporated herein by reference in their entirety as if fully stated herein.

126.  Plaintiff was protected from age discrimination and harassment under the ADEA, 29 U.S.C. § 623(a) ("ADEA") and R.I. Gen 1956 § 28-5-1 et seq. ("FEPA") and R.I. Gen. Law § 42-112-1 et seq. (RICRA).

127. Defendant's agents subjected Plaintiff to harassment and disparate treatment because of age which changed the terms and conditions of her employment in the ways stated above.

128. Defendant and its agents individually applied policies and procedures disparately against Plaintiff in the selection process for the Business Manager position and four other positions Plaintiff subsequently applied to.

129. Disparate treatment in failure to hire was evident through employer policies and practices.

130. Such discriminatory application of the policies and practices were in a willful, intentional manner, motivated by animus, impermissible and unlawful, thus violating, *inter alia*, ADEA, FEPA, RICRA.

131. But for the disparate treatment, Plaintiff would have been promoted to the Business Manager job and the four other jobs Plaintiff applied to.

132. A substantially younger female or male were selected instead of Plaintiff for the Business Manager position and the other four jobs Plaintiff applied to.

133. Plaintiff experienced the damages aforesaid as a proximate result of Defendant's agents' intentional conduct.

134. Because Defendant's conduct was intentional, constitutes gross negligence, recklessness, and willful and/or wanton, punitive or exemplary damages are warranted.

135. Defendant is vicariously responsible for the acts and omissions of its agents under *Respondeat Superior*.

136. Plaintiff seeks multiple damages under the ADEA.

### COUNT TWO
*AGE DISCRIMINATION DISPARATE TREATMENT - FAILURE TO HIRE*
***Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) and § 623(d) (ADEA), Violation of RI Fair Employment Practices Act, R.I. Gen 1956 § 28-5-1 et seq. (FEPA), and Rhode Island Civil Rights Act of 1990, R.I. Gen. Law § 42-112-1 et seq. (RICRA)***

137. Paragraphs 1-124 are incorporated herein by reference in their entirety as if fully stated herein.

14

138. Plaintiff was protected from age discrimination and harassment under the ADEA, 29 U.S.C. § 623(a) ("ADEA") and R.I. Gen 1956 § 28-5-1 et seq. ("FEPA") and R.I. Gen. Law § 42-112-1 et seq. (RICRA).

139. Defendant's agents subjected Plaintiff to harassment and disparate treatment because of age which changed the terms and conditions of her employment in the ways stated above.

140. Defendant and its agents individually applied policies and procedures disparately against Plaintiff in the selection process for the four other positions Plaintiff subsequently applied to which were not considered "promotions."

141. Disparate treatment in failure to hire was evident through employer policies and practices.

142. Such discriminatory application of the policies and practices were in a willful, intentional manner, motivated by animus, impermissible and unlawful, thus violating, *inter alia*, ADEA, FEPA, RICRA.

143. But for the disparate treatment, Plaintiff would have been hired into any of the four other jobs Plaintiff applied to which were not jobs considered to be "promotions".

144. A substantially younger female or male were selected instead of Plaintiff for the other four jobs Plaintiff applied to which were not considered to be "promotions."

145. Plaintiff experienced the damages aforesaid as a proximate result of Defendant's agents' intentional conduct.

146. Because Defendant's conduct was intentional, constitutes gross negligence, recklessness, and willful and/or wanton, punitive or exemplary damages are warranted.

147. Defendant is vicariously responsible for the acts and omissions of its agents under *Respondeat Superior*.

148. Plaintiff seeks multiple damages under the ADEA.

**COUNT THREE**

*AGE DISCRIMINATION DISPARATE TREATMENT – CONSTRUCTIVE DISCHARGE*
***Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) and § 623(d) (ADEA), Violation of RI Fair Employment Practices Act, R.I. Gen 1956 § 28-5-1 et seq. (FEPA), and Rhode Island Civil Rights Act of 1990, R.I. Gen. Law § 42-112-1 et seq. (RICRA)***

149. Paragraphs 1-124 are incorporated herein by reference in their entirety as if fully stated herein.

150. Plaintiff was protected from age discrimination and harassment under the ADEA, 29 U.S.C. § 623(a) ("ADEA") and R.I. Gen 1956 § 28-5-1 et seq. ("FEPA") and R.I. Gen. Law § 42-112-1 et seq. (RICRA).

151. Defendant's agents subjected Plaintiff to harassment and disparate treatment because of age which changed the terms and conditions of her employment in the ways stated above.

152. No reasonable person could have remained in employment reporting to – and training - the substantially younger, less qualified employee who was selected for the promotion over Plaintiff for the Business Manager role.

153. Plaintiff had no reasonable choice but to constructively discharged for the aforesaid reasons.

154. But for the disparate treatment, Plaintiff would have not have been discharged from URI.

155. Because Defendant's conduct was intentional, constitutes gross negligence, recklessness, and willful and/or wanton, punitive or exemplary damages are warranted.

156. Defendant is vicariously responsible for the acts and omissions of its agents under *Respondeat Superior*.

157. Plaintiff seeks multiple damages under the ADEA.

**COUNT FOUR**

*AGE DISCRIMINATION DISPARATE IMPACT - FAILURE TO PROMOTE*
***Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) and §
623(d) (ADEA), Violation of RI Fair Employment Practices Act, R.I. Gen 1956 § 28-5-1 et
seq. (FEPA), and Rhode Island Civil Rights Act of 1990, R.I. Gen. Law § 42-112-1 et seq.
(RICRA)***

158. Paragraphs 1-124 are incorporated herein by reference in their entirety as if fully stated herein.

159. Plaintiff was protected from age discrimination under the ADEA, 29 U.S.C. § 623(a) ("ADEA") and R.I. Gen 1956 § 28-5-1 et seq. ("FEPA") and R.I. Gen. Law § 42-112-1 et seq. (RICRA).

160. The employment policy or practice related to the selection of the Business Manager and the four other positions Plaintiff applied for which were considered "promotions" had a disparate effect on older female candidates and Plaintiff is an older female.

161. The disparate consequence experienced by the Plaintiff directly resulted from the employment policy or practice related to the selection procedures for the Business Manager position and any other of the four jobs Plaintiff applied for which were considered "promotions."

162. An alternative effective employment policy or practice exists for the selection procedure used for jobs that were promotions for Plaintiff that would be non-discriminatory.

163. There is no legitimate and non-discriminatory purpose for the contested policy or practice used to hire for the Business Manager position and any of the other four jobs that were promotions for Plaintiff.

164. Specifically, Defendant cannot prove that the selection tools used had validity, no adverse impact, and otherwise followed the EEOC guidelines for selection tools.

165. But for the disparate impact of the selection procedures, Plaintiff would have been promoted to the Business Manager job and the four other jobs Plaintiff applied to which were promotions for her.

166. Plaintiff experienced the damages aforesaid as a proximate result of Defendant's agents' intentional conduct.

167. Because Defendant's conduct was intentional, constitutes gross negligence, recklessness, and willful and/or wanton, punitive or exemplary damages are warranted.

168. Defendant is vicariously responsible for the acts and omissions of its agents under *Respondeat Superior*.

169. Plaintiff seeks multiple damages under the ADEA.

**COUNT FIVE**
*AGE DISCRIMINATION DISPARATE IMPACT - FAILURE TO HIRE*
***Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) and § 623(d) (ADEA), Violation of RI Fair Employment Practices Act, R.I. Gen 1956 § 28-5-1 et seq. (FEPA), and Rhode Island Civil Rights Act of 1990, R.I. Gen. Law § 42-112-1 et seq. (RICRA)***

170. Paragraphs 1-124 are incorporated herein by reference in their entirety as if fully stated herein.

171. Plaintiff was protected from age discrimination under the ADEA, 29 U.S.C. § 623(a) ("ADEA") and R.I. Gen 1956 § 28-5-1 et seq. ("FEPA") and R.I. Gen. Law § 42-112-1 et seq. (RICRA).

172. The employment policy or practice related to the selection of the four other positions Plaintiff applied for which were not considered "promotions" had a disparate effect on older female candidates and Plaintiff is an older female.

173. The disparate consequence experienced by the Plaintiff directly resulted from the employment policy or practice related to the selection procedures used of the four jobs Plaintiff applied for which were not considered "promotions."

174. An alternative effective employment policy or practice exists for the selection procedures used for jobs that were not promotions for Plaintiff that would be non-discriminatory.

175. There is no legitimate and non-discriminatory purpose for the contested policy or practice used to hire for the four jobs that were promotions for Plaintiff.

176. Specifically, Defendant cannot prove that the selection tools used had validity, no adverse impact, and otherwise followed the EEOC guidelines for selection tools.

177. But for the disparate impact of the selection procedures, Plaintiff would have been hired into the four other jobs Plaintiff applied to which were not promotions for her.

178. Plaintiff experienced the damages aforesaid as a proximate result of Defendant's agents' intentional conduct.

179. Because Defendant's conduct was intentional, constitutes gross negligence, recklessness, and willful and/or wanton, punitive or exemplary damages are warranted.

180. Defendant is vicariously responsible for the acts and omissions of its agents under *Respondeat Superior*.

181. Plaintiff seeks multiple damages under the ADEA.

**COUNT SIX**
*RETALIATORY FAILURE TO PROMOTE*
***Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) and § 623(d) (ADEA), Violation of RI Fair Employment Practices Act, R.I. Gen 1956 § 28-5-1 et seq. (FEPA), and Rhode Island Civil Rights Act of 1990, R.I. Gen. Law § 42-112-1 et seq. (RICRA)***

182. Paragraphs 1-124 are incorporated herein by reference in their entirety as if fully stated herein.

183. Plaintiff was protected from retaliatory harassment, discrimination, and termination as a result of engaging in protected conduct under the ADEA, FEPA, and RICRA.

184. Plaintiff engaged in protected conduct, opposed unlawful conduct and exercised her rights under the ADEA, FEPA, and RICRA, by reporting age-based discrimination and by filing a charge with RICRA.

185. As a result of Plaintiff's protected activity, Defendant's agents retaliated; they failed to promote Plaintiff to the Business Manager position and the other four jobs she applied to which were considered "promotions".

186. But for Defendant's agents' retaliatory conduct, Plaintiff would have been promoted.

187. Defendant's agents' retaliatory conduct, policies, and practices were intentionally retaliatory, motivated by animus, impermissible and unlawful considerations and violate, *inter alia*, ADEA, FEPA, and RICRA.

188. Plaintiff experienced the damages aforesaid as a proximate result of Defendant's agents' intentional conduct.

189. Because Defendant's conduct was intentional, constitutes gross negligence, recklessness, and willful and/or wanton, punitive or exemplary damages are warranted.

190. Defendant is vicariously responsible for the acts and omissions of its agents under Respondeat Superior.

191. Plaintiff seeks multiple damages under the ADEA.

## COUNT SEVEN
### *RETALIATORY FAILURE TO HIRE*
***Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) and § 623(d) (ADEA), Violation of RI Fair Employment Practices Act, R.I. Gen 1956 § 28-5-1 et seq. (FEPA), and Rhode Island Civil Rights Act of 1990, R.I. Gen. Law § 42-112-1 et seq. (RICRA)***

192. Paragraphs 1-124 are incorporated herein by reference in their entirety as if fully stated herein.

193. Plaintiff was protected from retaliatory harassment, discrimination, and termination as a result of engaging in protected conduct under the ADEA, FEPA, and RICRA.

194. Plaintiff engaged in protected conduct, opposed unlawful conduct and exercised her rights under the ADEA, FEPA, and RICRA, by reporting age-based discrimination and by filing a charge with RICRA.

195. As a result of Plaintiff's protected activity, Defendant's agents retaliated; they failed to hire Plaintiff into the other four jobs she applied to which were not considered "promotions".

196. But for Defendant's agents' retaliatory conduct, Plaintiff would have been hired.

197. Defendant's agents' retaliatory conduct, policies, and practices were intentionally retaliatory, motivated by animus, impermissible and unlawful considerations and violate, *inter alia*, ADEA, FEPA, and RICRA.

198. Plaintiff experienced the damages aforesaid as a proximate result of Defendant's agents' intentional conduct.

199. Because Defendant's conduct was intentional, constitutes gross negligence, recklessness, and willful and/or wanton, punitive or exemplary damages are warranted.

200. Defendant is vicariously responsible for the acts and omissions of its agents under Respondeat Superior.

201. Plaintiff seeks multiple damages under the ADEA.

## COUNT EIGHT
### *RETALIATORY CONSTRUCTIVE DISCHARGE*
***Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a) and § 623(d) (ADEA), Violation of RI Fair Employment Practices Act, R.I. Gen 1956 § 28-5-1 et seq. (FEPA), and Rhode Island Civil Rights Act of 1990, R.I. Gen. Law § 42-112-1 et seq. (RICRA)***

202. Paragraphs 1-124 are incorporated herein by reference in their entirety as if fully stated herein.

203.  Plaintiff was protected from retaliatory harassment, discrimination, and termination as a result of engaging in protected conduct under the ADEA, FEPA, and RICRA.

204. Plaintiff engaged in protected conduct, opposed unlawful conduct and exercised her rights under the ADEA, FEPA, and RICRA, by reporting age-based discrimination and by filing a charge with RICRA.

205. As a result of Plaintiff's protected activity, Defendant's agents retaliated; they caused Plaintiff to be constructively discharged.

206. No reasonable person could have remained in employment reporting to – and training - the substantially younger, less qualified employee who was selected for the promotion over Plaintiff for the Business Manager role.

207. Plaintiff had no reasonable choice but to constructively discharged for the aforesaid reasons.

208.  But for the disparate treatment, Plaintiff would have not have been discharged from URI.

209.  Because Defendant's conduct was intentional, constitutes gross negligence, recklessness, and willful and/or wanton, punitive or exemplary damages are warranted.

210.  Defendant is vicariously responsible for the acts and omissions of its agents under

   *Respondeat Superior*.

211. Plaintiff seeks multiple damages under the ADEA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

a.  Order judgment for Plaintiff against Defendant on all Counts of the Complaint and declare that the practices detailed in this Complaint are unlawful;

b.  Order, for all applicable Counts, that Defendant make Plaintiff whole by awarding appropriate back pay with interest, front pay, compensation for all other lost income and benefits, earning capacity, and all other relevant entitlements and emoluments;

c.  Order, for all applicable Counts, that Plaintiff be awarded an amount of money which will fairly compensate her mental anguish, emotional pain and suffering, damage to his reputation, loss of standing in the community, and other damages incurred;

d.  Order, for all applicable Counts, that the Defendant pay Plaintiff's costs and reasonable attorney's fees resulting from this action;

e.  Order, for all applicable Counts, that the Defendant pay punitive or exemplary damages, as appropriate to punish Defendant for its malicious conduct, recklessness conduct, and/or callous indifference to the statutorily and common law protected rights of Plaintiff;

f.  Order, for all applicable Counts, that Defendant pay post-judgment interest and pre-judgment interest, including interest for all damages awarded to Plaintiff from the date the cause of action accrued, where appropriate and allowable by law;

g.  Retain jurisdiction of this action to ensure full compliance; and

h.  Order, for all Counts, such other relief to Plaintiff as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

***PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE***

September 29, 2022

Respectfully Submitted by Plaintiff,

LINDA LENZ,
By her attorney,

 /s/ Paige Munro-Delotto
Paige Munro-Delotto, Ph.D., Esq. #9291
Munro-Delotto Law, LLC
400 Westminster Street, Ste. 200
Providence, RI 02903
(401) 521-4529
(866) 593-9755 (fax)
Email: Paige@pmdlawoffices.com